## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

GAYLE DANIELS, as Guardian
of MICHAEL WILLIAMSON, a
Legally Incapacitated Person,

     Plaintiff,

v.

Case No

Hon.

COUNTY OF OAKLAND; DEPUTY
DAYNA DeMEESTER; DEPUTY JOSHUA
WURFEL; DEPUTY DONALD NAPPE;
DEPUTY MICHAEL REYNA; DEPUTY
ANTHONY TALIERCIO; and
DEPUTY MICHAEL LANCASTER;
in Their Individual and Official Capacities;
WELLPATH LLC, f/k/a Correct Care Solutions, LLC;
KELLY PAGE, R.N.; MEAGAN ALLEN, R.N.;
HANNAH HESSELL CARDINALE, R.N.;
KAREN KACHADURIAN, R.N.; KELLIE STAMP, R.N.;
CHAD LEE, EMT and/or EMT-P; MITCHELL
JAREMA, EMT and/or EMT-P; and
MICHAEL J. REID, EMT and/or EMT-P;
jointly and severally.

     Defendants.

GEOFFREY N. FIEGER (P30441)
DAVID A. DWORETSKY (P67026)
*Fieger, Fieger, Kenney & Harrington, P.C.*
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI 48075
(248) 355-5555
d.dworetsky@fiegerlaw.com

## COMPLAINT, AFFIDAVITS OF MERIT, AND DEMAND FOR JURY TRIAL

**NOW COMES**, Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, by and through her attorneys, *FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.*, and for her Complaint, Affidavits of Merit, and Demand for Jury Trial against the above-named Defendants, Plaintiff hereby states:

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution, particularly under the provisions of the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and under the laws of the United States, particularly under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988, and under the statutes and common law of the State of Michigan.

2. This court has jurisdiction over this cause of action under the provisions of 28 U.S.C. §§ 1331 and 1343 and pendent jurisdiction over state claims that arise out of the nucleus of operative facts common to Plaintiff's federal claims.

3. The unlawful actions alleged in this Complaint took place within the City of Pontiac, County of Oakland, State of Michigan, and as such jurisdiction lies in the United States District Court for the Eastern District of Michigan (Southern Division). Venue is proper under 28 U.S.C. §1391(b).

{01176128.DOCX}
2

4.      The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest, costs and attorney fees.

## PARTIES

5.      Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

6.      At all times relevant to this lawsuit, GAYLE DANIELS, is a resident of White Lake Township, County of Oakland, State of Michigan.

7.      Plaintiff, GAYLE DANIELS, is duly appointed Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, who lives in White Lake Township, County of Oakland, State of Michigan.

8.      At all times relevant hereto, Defendant COUNTY OF OAKLAND ("Oakland County") was a municipal corporation, duly organized in carrying on governmental functions in the County of Oakland, State of Michigan, and one of the functions was to organize, operate, staff, train, and supervise the jail operations at the Oakland County Jail.

9.      At all times relevant hereto, Defendant DEPUTY DAYNA DeMEESTER was a deputy officer at the Oakland County Jail, employed by OAKLAND COUNTY, who was acting under the color of state law, within the course and scope of his employment with OAKLAND COUNTY and

was acting under the color and pretense of ordinances, regulations, laws and customs of OAKLAND COUNTY, and is being sued in her individual and official capacities.

10.    At all times relevant hereto, Defendant DEPUTY MICHAEL REYNA was a deputy officer at the Oakland County Jail, employed by OAKLAND COUNTY, who was acting under the color of state law, within the course and scope of his employment with OAKLAND COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of OAKLAND COUNTY, and is being sued in his individual and official capacities.

11.    At all times relevant hereto, Defendant DEPUTY JOSHUA WURFEL was a deputy officer at the Oakland County Jail, employed by OAKLAND COUNTY, who was acting under the color of state law, within the course and scope of his employment with OAKLAND COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of OAKLAND COUNTY, and is being sued in his individual and official capacities.

12.    At all times relevant hereto, Defendant DEPUTY DONALD NAPPE was a deputy officer at the Oakland County Jail, employed by OAKLAND COUNTY, who was acting under the color of state law, within

the course and scope of his employment with OAKLAND COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of OAKLAND COUNTY, and is being sued in his individual and official capacities.

13. At all times relevant hereto, Defendant DEPUTY ANTHONY TALIERCIO was a deputy officer at the Oakland County Jail, employed by OAKLAND COUNTY, who was acting under the color of state law, within the course and scope of his employment with OAKLAND COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of OAKLAND COUNTY, and is being sued in his individual and official capacities.

14. At all times relevant hereto, Defendant DEPUTY MICHAEL LANCASTER was a deputy officer at the Oakland County Jail, employed by OAKLAND COUNTY, who was acting under the color of state law, within the course and scope of his employment with OAKLAND COUNTY and was acting under the color and pretense of ordinances, regulations, laws and customs of OAKLAND COUNTY, and is being sued in his individual and official capacities.

15.   OAKLAND COUNTY is responsible for, and does in fact, hire, train, supervise, and instruct deputies, Oakland County Jail detention officers, and jail staff of all grades in the performance of their duties.

16.   At all times relevant hereto, Defendant WELLPATH, LLC, f/k/a CORRECT CARE SOLUTIONS, LLC ("WELLPATH") is a foreign limited liability Company and/or corporation that conducts regular business in Oakland County, Michigan, including at 1201 N. Telegraph Rd., Pontiac, MI, 48341, Oakland County Jail.

17.   Upon information and belief Defendant, WELLPATH, LLC has the registered agent of Corporate Creations Network Inc., 28175 Haggerty Road, Novi, MI 48377.

18.   Upon information and belief, Defendant, KELLY PAGE, R.N. (hereinafter "PAGE") is a registered nurse licensed to practice nursing in the State of Michigan, and conducts regular business in the County of Oakland, State of Michigan.

19.   Upon information and belief, Defendant, MEAGAN ALLEN, R.N. (hereinafter "ALLEN") is a registered nurse licensed to practice nursing in the State of Michigan, and conducts regular business in the County of Oakland, State of Michigan.

20.    Upon information and belief, Defendant, HANNAH HESSELL CARDINALE, R.N. (hereinafter "CARDINALE") is a registered nurse licensed to practice nursing in the State of Michigan, and conducts regular business in the County of Oakland, State of Michigan.

21.    Upon    information    and    belief,    Defendant,    KAREN KACHADURIAN, R.N. (hereinafter "KACHADURIAN") is a registered nurse licensed to practice nursing in the State of Michigan, and conducts regular business in the County of Oakland, State of Michigan.

22.    Upon information and belief, Defendant, KELLIE STAMP, R.N. (hereinafter "STAMP") is a registered nurse licensed to practice nursing in the State of Michigan, and conducts regular business in the County of Oakland, State of Michigan.

23.    Upon information and belief, Defendant, CHAD LEE, EMT and/or EMT-P (hereinafter "LEE") is a registered emergency medical technician and/or paramedic licensed to practice emergency medical services in the State of Michigan, and conducts regular business in the County of Oakland, State of Michigan.

24.    Upon    information    and    belief,    Defendant,    MITCHELL JAREMA, EMT and/or EMT-P (hereinafter "JAREMA") is a registered emergency    medical    technician    and/or    paramedic    licensed    to    practice

emergency medical services in the State of Michigan, and conducts regular business in the County of Oakland, State of Michigan.

25. Upon information and belief, Defendant, MICHAEL J. REID, EMT and/or EMT-P (hereinafter "REID") is a registered emergency medical technician and/or paramedic licensed to practice emergency medical services in the State of Michigan, and conducts regular business in the County of Oakland, State of Michigan.

26. At all times relevant hereto, Defendants KELLY PAGE, R.N., MEAGAN ALLEN, R.N., HANNAH HESSELL CARDINALE, R.N., KAREN KACHADURIAN, R.N., and KELLIE STAMP, R.N. were engaged in the practice of nursing in the County of Oakland, State of Michigan, and held themselves out to the public in general, and to MICHAEL WILLIAMSON, in particular, as skilled and competent nurses, capable of properly and skillfully treating, caring for, and providing medical services to the public in general, and to MICHAEL WILLIAMSON in particular.

27. At all times relevant hereto, Defendants, KELLY PAGE, R.N., MEAGAN ALLEN, R.N., HANNAH HESSELL CARDINALE, R.N., KAREN KACHADURIAN, R.N., and KELLIE STAMP, R.N. were the actual, apparent, and/or ostensible principals, agents, servants, and/or

employees of Defendant, WELLPATH, and at all times relevant hereto, were acting within the course and scope of their agency and/or employment with Defendant, WELLPATH when the medical malpractice/gross negligence/deliberate indifference alleged herein was committed, thereby imposing vicarious liability upon the corporate Defendant WELLPATH.

28.    At all times relevant hereto, Defendants CHAD LEE, EMT and/or EMT-P, MITCHELL JAREMA, EMT and/or EMT-P, and MICHAEL J. REID, EMT and/or EMT-P were engaged in the practice as emergency medical technicians and/or paramedic services in the County of Oakland, State of Michigan, and held themselves out to the public in general, and to MICHAEL WILLIAMSON, in particular, as skilled and competent emergency medical technicians and/or paramedics, capable of properly and skillfully treating, caring for, and providing medical services to the public in general, and to MICHAEL WILLIAMSON in particular.

29.    At all times relevant hereto, Defendants, CHAD LEE, EMT and/or EMT-P, MITCHELL JAREMA, EMT and/or EMT-P, and MICHAEL J. REID, EMT and/or EMT-P were the actual, apparent, and/or ostensible principals, agents, servants, and/or employees of Defendant, WELLPATH, and at all times relevant hereto, were acting within the course and scope of their agency and/or employment with Defendant, WELLPATH

{01176128.DOCX}    9

when the medical malpractice/gross negligence/deliberate indifference alleged herein was committed, thereby imposing vicarious liability upon the corporate Defendant WELLPATH.

30.    Defendant WELLPATH, is vicariously liable for the actions and inactions of all of its agents, ostensible agents, and/or employees whether physicians, residents, nursing staff, emergency medical technicians and/or paramedics or other healthcare providers as set forth herein and incorporated by reference herein.

31.    Defendant WELLPATH is further liable in its own capacity for its own actions and inactions of negligence, gross negligence, deliberate indifference and/or professional malpractice.

32.    At all times relevant to this Complaint, Defendant WELLPATH was performing health care services for Oakland County.

## FACTUAL STATEMENT

33.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

34.    On April 13, 2019, MICHAEL WILLIAMSON was arrested for a probation violation and taken to the Oakland County Sherriff's Office Jail in Pontiac Michigan.

{01176128.DOCX}                                    10

35.     On April 14, 2019, Mr. Williamson was processed and placed in his cell at the Oakland County Jail. No medical clearance or health history was performed on this date or during his incarceration.

36.     On April 17, 2019 at 1:52 p.m., a classification interview had to be terminated because of Mr. Williamson's changed medical status. Mr. Williamson was vomiting, having tremors, not replying to questions, and showing signs of altered mental status.

37.     Defendant Nurse MEAGAN ALLEN attempted to speak with Mr. Williamson through his cell food slot, but Mr. Williamson was non-responsive and stood in the corner of his cell. Mr. Williamson then began to defecate on the floor of the cell, and only laughed when questioned.

38.     On April 17, 2019, after the attempted classification interview, Mr. Williamson was taken to McLaren Oakland Hospital.

39.     On April 17, 2019, while at McLaren Oakland Hospital Mr. Williamson was diagnosed with opioid withdrawal then taken back to Oakland County Jail that same day.

40.     WELLPATH received Mr. Williamson's medical records from McLaren Hospital confirming a history of opioid withdrawal during Mr. Williamson's medical stay on April 17, 2019.

41.    OAKLAND COUNTY received Mr. Williamson's medical records from McLaren Hospital confirming a history of opioid withdrawal during Mr. Williamson's medical stay on April 17, 2019.

42.    Mr. Williamson's medical records from McLaren Hospital confirming a history of opioid withdrawal during Mr. Williamson's medical stay on April 17, 2019, were integrated in Mr. Williamson's medical file with Defendant WELLPATH and integrated into Mr. Williamson's jail file with Defendant OAKLAND COUNTY.

43.    On April 18, 2019, approximately 3:00 a.m., Mr. Williamson again was defecating in his cell and playing with feces. A cell extraction team had to physically remove Mr. Williamson from his cell so that it could be cleaned, because he would not listen to commands.

44.    On April 18, 2019, despite Mr. Williamson's behavior in his cell, he was medically cleared by Defendant Nurse HANNAH HESSELL CARDINALE and allowed to return to his cell.

45.    Prior to returning to his cell, Mr. Williamson was cleaned up, placed in an anti-suicide smock, placed in handcuffs, and returned to his cell with no other action taken.

46.    On April 18, 2019, around 9:20 a.m., Mr. Williamson was discovered in his cell standing naked by his toilet. Mr. Williamson had

noticeable difficulty picking up his anti-suicide gown, approached a case worker, and exposed himself.

47. Despite instructions to monitor Mr. Williamson for unusual behavior, Defendant MICHAEL REYNA did not take any other action and did not report the encounter to the medical staff.

48. On April 20, 2019, Defendant Nurses KELLIE STAMP and KAREN KACHADURIAN were unable to complete a necessary physical examination of Mr. Williamson, because he was unable to be transported to the infirmary due to his unpredictability, was unable to answer questions, and could not provide consent to be treated.

49. Defendant Nurses KELLIE STAMP and KAREN KACHADURIAN took no action despite Mr. Williamson's deteriorated condition and simply indicated they would reschedule his physical examination at some unknown time in the future.

50. On April 21, 2019, at 4:11 a.m., Mr. Williamson was observed standing hunched over near his cell door after he fell.

51. Mr. Williamson was examined by Defendant EMT MITCHELL JAREMA and Defendant Nurse HANNAH HESSELL CARDINALE, in which, Mr. Williamson was responded very slow to the questions asked and was unable to move about unassisted. Defendant EMT MITCHELL

JAREMA and Defendant Nurse HANNAH HESSELL CARDINALE cleared Mr. Williamson leaving him in his cell.

52. On April 21, 2019, approximately at 10:45 a.m., Mr. Williamson was found sitting down in his cell, naked, in front of the door. His lunch tray and drink were left on the food slot for 15 minutes and went untouched. He would not respond to commands and appeared confused when asked if he was going to eat. Mr. Williamson never did eat anything from his tray.

53. Despite instructions to monitor Mr. Williamson for unusual behavior, Defendants MICHAEL LANCASTER and DONALD NAPPE did not take any other action and did not report the encounter to the medical staff.

54. On April 21, 2019, approximately 6:30 p.m., Mr. Williamson did not eat dinner, and again would not answer if he was going to eat. His food, again, went untouched.

55. On April 21, 2019, approximately 8:15 p.m., Mr. Williamson was now observed shaking in his cell during rounds. Defendant EMT-Paramedic CHAD LEE noted that Mr. Williamson was on the floor covered in urine and feces.

56.    Defendant EMT-Paramedic CHAD LEE also noted Mr. Williamson had been picking and pulling out his pubic hairs.

57.    Defendant EMT-Paramedic CHAD LEE despite these and other noted behaviors demonstrating an obvious medical crisis on April 21, 2019, took no action and cleared Mr. Williamson to remain in his cell.

58.    On April 22, 2019, approximately 10:50 a.m., Mr. Williamson was found nonresponsive and convulsing at lunch. Yet no action was taken by the clinic, and Mr. Williamson was again medically cleared by Defendant WELLPATH staff, including but not limited to EMT MICHAEL J. REID and left in his cell.

59.    On April 22, 2019, at approximately 3:00 p.m., Mr. Williamson was again found covered in feces and urine. Defendant EMT-Paramedic CHAD LEE despite these and other noted behaviors on April 22, 2019, took no action and cleared Mr. Williamson and left him in his cell.

60.    Mr. Williamson was placed in a wheelchair and taken to the shower where Defendants DAYNA DeMEESTER, JOSHUA WURFEL, and DOANLD NAPPE had to physically shower him due to his muscles being so tight and rigid that he was unable to move by himself.

61.    Defendants DAYNA DeMEESTER, JOSHUA WURFEL, and DOANLD NAPPE then dressed Mr. Williamson in a clean uniform,

provided him with a clean blanket, and returned him to his cell with no other action taken.

62. On April 22, 2019, approximately 6:40 p.m., Defendants DAYNA DeMEESTER and ANTHONY TALIERCIO observed that Mr. Williamson again did not eat any dinner. Defendants observed that Mr. Williamson was completely immobile, and he had been in a locked and rigid position. Mr. Williamson would just lie on his mattress and never move. No action was taken despite the obvious medical emergency.

63. On April 22, 2019, approximately 9:00 p.m., Mr. Williamson was not verbally responsive, continued to shake and convulse, and had to be physically forced to take his medication because he could not even sit up or put his hand to his mouth by himself. Mr. Williamson was returned to his cell with no action taken.

64. On April 23, 2019, at approximately, 12:30 a.m., MICHAEL WILLIAMSON was finally taken to McLaren Oakland Hospital unresponsive and tremulous. Mr. Williamson remained nonverbal and confused in the intensive care unit and was diagnosed with the following conditions: toxic metabolic encephalopathy requiring ventilatory support, aspiration pneumonia, acute kidney injury second to dehydration, kidney failure requiring dialysis, dysphagia, rhabdomyolysis, hyperphosphatemia,

elevated liver function tests second to rhabdomyolysis, heroin withdrawal, and severe protein calorie malnutrition.

65.    MICHAEL WILLIAMSON was a patient at McLaren Oakland Hospital from April 23, 2019 to May 15, 2019, until he was discharged with a diagnosis of uremic encephalopathy for in-patient therapy, including but not limited to transitional care at the Villa at Green Lake Estates.

66.    At all times relevant hereto, the individually named Defendants, DeMEESTER, RENYA, WURFEL, NAPPE, TALIERCIO, and LANCASTER failed to timely and/or appropriately perform physical jail cell checks as is required of them by OAKLAND COUNTY's own policies and procedures.

67.    At all times relevant hereto, the Oakland County Jail was equipped with visual and audio monitoring systems, and the individually named Defendants failed to timely and/or appropriately monitor MICHAEL WILLIAMSON and/or utilize the video and audio monitoring equipment as is required of them by OAKLAND COUNTY's own policies and procedures.

68.    At all times during the incarceration of MICHAEL WILLIAMSON at the Oakland County Jail, MICHAEL WILLIAMSON behaved in such a fashion that was highly evident that he was experiencing

several medical episodes, was rapidly deteriorating, and needed prompt and immediate medical treatment.

69. At all times relevant hereto, the individually named Defendants DeMEESTER, REYNA, WURFEL, NAPPE, TALIERCIO, and LANCASTER knew or should have known of MICHAEL WILLIAMSON's delicate state and deteriorating condition.

70. At all times relevant hereto, the individually named Defendants DeMEESTER, REYNA, WURFEL, NAPPE, TALIERCIO, and LANCASTER failed to initiate close observation of MICHAEL WILLIAMSON, and/or take proper precautions to protect him, and/or take steps to properly and adequately monitor him.

71. The individually named Defendants DeMEESTER, REYNA, WURFEL, NAPPE, TALIERCIO, and LANCASTER ignored MICHAEL WILLIAMSON and left him in his cell without further monitoring for extended periods of time despite Mr. Williamson being unresponsive during that time.

72. Defendants are not entitled to governmental immunity and/or qualified immunity.

## COUNT I
## DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
## AGAINST DEFENDANTS DeMEESTER, REYNA, WURFEL,
## NAPPE, TALIERCIO, LANCASTER AND
## COUNTY OF OAKLAND

73.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

74.    At all times mentioned herein, Defendants DeMEESTER, WURFEL, REYNA, NAPPE, TALIERCIO, and LANCASTER were acting under color of law, and the ordinances, regulations, and/or customs of the Oakland County Jail and Defendant OAKLAND COUNTY.    These individuals and Defendant OAKLAND COUNTY are collectively referred to herein as the "Oakland County Defendants."

75.    At all times relevant hereto, the Oakland County Defendants subjected MICHAEL WILLIAMSON to a deprivation of his rights, privileges, and immunities, as secured by the Constitution and laws of the United States and State of Michigan.

76.    Pursuant to 42 U.S.C. § 1983, as well as the Eighth, and Fourteenth Amendments to the United States Constitution, Defendant OAKLAND COUNTY and the individually named officers owed

MICHAEL WILLIAMSON the duties to act prudently and with reasonable care, and otherwise to avoid cruel and unusual punishment.

77.     Pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, the Civil Rights Acts, specifically 42 U.S.C. § 1983, a detainee like MICHAEL WILLIAMSON had the right to medical treatment for serious medical needs while in custody as well as to be free from cruel and unusual punishment.

78.     The conduct of Defendant OAKLAND COUNTY, through the individually named Defendant deputies, deprived MICHAEL WILLIAMSON of his clearly established rights, privileges, and immunities in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 USC § 1983.

79.     The Oakland County Defendants owed a duty to the general public, and specifically to MICHAEL WILLIAMSON, to act prudently and with reasonable care in the formulation of its policies and procedures relative to providing medical treatment to detainees, as well as to train, test, evaluate, review, and update its officers' abilities to function in a reasonable manner and in conformance with the laws of the United States and the State of Michigan relative to providing detainees with the appropriate and relevant medical attention to their known and well documented medical needs.

{01176128.DOCX}                                     20

80.     Each and every one of the Oakland County Defendants violated

MICHAEL WILLIAMSON's civil rights when they displayed deliberate

indifference toward MICHAEL WILLIAMSON's serious medical condition

in the following ways:

a. Failure to properly train officers and jail personnel in the
   evaluation of whether a detainee needs medical treatment;

b. Failure to provide MICHAEL WILLIAMSON with timely
   and/or immediate medical attention for a serious medical need;

c. Failure to assure that MICHAEL WILLIAMSON was
   examined and/or treated after he exhibited signs of distress and
   erratic behavior as described previously;

d. Failure to assure that MICHAEL WILLIAMSON was
   examined and/or treated after he exhibited signs of medical
   episodes;

e. Failure to perform physical jail cell checks and/or otherwise
   abide by policies, if any, to ensure the physical well-being of
   detainees, specifically MICHAEL WILLIAMSON;

f. Failure to timely and/or appropriately monitor MICHAEL
   WILLIAMSON utilizing the video and audio monitoring
   equipment with which the Oakland County Jail was equipped;

g. Failure to adequately monitor the well-being of MICHAEL
   WILLIAMSON with knowledge that MICHAEL
   WILLIAMSON suffered from opioid withdrawal;

h. Failed to provide timely and/or immediate medical attention to
   MICHAEL WILLIAMSON;

i. Allowing MICHAEL WILLIAMSON to go with virtually no
   food intake knowing that he had specific medical conditions;

j.  Allowing MICHAEL WILLIAMSON, an inmate with known serious health conditions to be left alone in his cell with no supervision/monitoring, or ignoring of same;

k.  Allowing MICHAEL WILLIAMSON with known serious health condition to be left alone in his cell with no supervision/monitoring, or ignoring of same, while on medications with serious side effects and that create a fall risk; and

l.  Any and all other breaches that become known during the course of discovery which is hereby incorporated by reference.

81.  The acts and/or omissions of the Oakland County Defendants violated the civil rights of MICHAEL WILLIAMSON, which directly and proximately MICHAEL WILLIAMSON to suffer numerous injuries including, but not limited to the following:

a.  Toxic metabolic encephalopathy requiring ventilatory support;

b.  Aspiration pneumonia;

c.  Kidney failure requiring dialysis;

d.  Acute kidney injury second to dehydration;

e.  Dysphagia;

f.  Rhabdomyolysis;

g.  Hyperphosphatemia;

h.  Elevated liver function tests second to rhabdomyolysis;

i.  Opioid withdrawal;

j.  Severe protein calorie malnutrition;

k.  Body pain;

l.  Pain and suffering;

m. Anxiety;

n.  Mental anguish;

o.  Emotional distress;

p.  Fright and shock;

q.  Humiliation and/or mortification;

r.  Economic loss;

s.  Medical and hospital expenses;

t.  Punitive damages;

u.  Exemplary damages;

v.  Attorneys fees and costs pursuant to 42 U.S.C. §1988;

w. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and

x.  Any other damages allowed by law.

82.    The acts and/or omissions of the Oakland County Defendants were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of MICHAEL WILLIAMSON and Plaintiff therefore requests an award of punitive and exemplary damages against these Defendants according to proof.

{01176128.DOCX}                                    23

83.     Plaintiff has retained private counsel to represent her in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE,** Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT II
## FAILURE TO TRAIN, INADEQUATE POLICIES and/or PROCEDURES, CUSTOMS, AND PRACTICES, AND FAILURE TO SUPERVISE – DELIBERATE INDIFFERENCE DEFENDANT, OAKLAND COUNTY

84.     Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

85.     Pursuant to 42 USC § 1983, as well as the Fourth and Fourteenth Amendments to the United States Constitution, Defendant OAKLAND COUNTY owed MICHAEL WILLIAMSON certain duties to properly supervise, monitor, and train its officers to supervise the jail's detainees so that they would detect serious medical conditions and facilitate prompt and proper medical attention.

86.    Defendant OAKLAND COUNTY breached these duties via its

and/or absence thereof its policies, procedures, regulations, customs and/or

lack of and/or inadequate training, and thus exhibited a deliberate

indifference toward its detainees, and specifically toward MICHAEL

WILLIAMSON, when OAKLAND COUNTY:

      a. Failed to staff the jail with competent officers, and specifically, failed to ensure that Defendants DeMEESTER, REYNA, WURFEL, NAPPE, TALIERCIO, and LANCASTER, would respond competently to events involving inmates at the jail;

      b. Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor detainees, including but not limited to those, such as Plaintiff's legally incapacitated person, who have medical conditions of which they have been previously provided notice;

      c. Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor the well-being of detainees;

      d. Failed to ensure officers conduct timely and adequate physical jail cell checks on detainees to ensure the physical well-being of each detainee, and specifically MICHAEL WILLIAMSON;

      e. Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor detainees to ensure the well-being of each detainee, specifically MICHAEL WILLIAMSON;

      f. Failed to have policies, procedures, regulations, and/or customs to monitor and/or adequately monitor the well-being of detainees utilizing the audio/visual system with which the jail was equipped;

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

g. Failed to provide training and/or adequate training to its officers for the proper use of its audio/visual system with which the jail was equipped to ensure the well-being of each detainee;

h. Failed to provide training and/or adequate training to its officers to ensure the proper execution of policies, procedures, regulations, and/or customs to monitor and/or adequately monitor detainees to ensure the well-being of each detainee, specifically MICHAEL WILLIAMSON;

i. Failed to provide training and/or adequate training to its officers to recognize the signs of a medical episode and the need for immediate medical attention;

j. Failed to supervise its officers to ensure that its policies, regulations, procedures, customs, are being properly executed and that each detainee's, and specifically, MICHAEL WILLIAMSON's constitutional rights are being protected;

k. Failed to supervise its officers to ensure the adequate monitoring and supervision of detainees who have serious medical needs which require medical attention;

l. Failed to fully investigate and/or discipline and/or retrain its officers who do not abide by its policies, procedures, regulations and/or customs, if any, relative to recognizing the need for medical care and providing immediate medical attention to detainees;

m. Failed to fully investigate and/or discipline and/or retrain its officers who do not abide by its policies, procedures, regulations and/or customs, if any, regarding the frequency and/or sufficiency of physical jail checks, and/or monitoring and/or supervision of detainees by utilizing the audio/visual equipment with which the Oakland County Jail was equipped; and

n. All other breaches learned through the course of discovery which are hereby adopted by reference.

87.   Through its agents and employees, Defendant OAKLAND COUNTY's treatment of Plaintiff's decedent, including contracting with Defendant WELLPATH, and knowing it did not have policies and procedures of hiring and investigating their doctors, adequate oversight, supervision, training, procedures, policies, or mechanisms to ensure the safety and health of inmates constitutes an official policy, custom, pattern, or practice that deprived Plaintiff's decedent of his civil rights as guaranteed by the United States Constitution.

88.   The deprivation of constitutional rights alleged in this complaint are the direct result of official policy, custom and practices of Defendant OAKLAND COUNTY as well as Defendant WELLPATH.

89.   The acts and/or omissions of Defendant OAKLAND COUNTY violated the civil rights of MICHAEL WILLIAMSON, which directly and proximately caused MICHAEL WILLIAMSON to suffer numerous injuries including, but not limited to the following:

    a.  Toxic metabolic encephalopathy requiring ventilatory support;

    b.  Aspiration pneumonia;

    c.  Kidney failure requiring dialysis;

    d.  Acute kidney injury second to dehydration;

    e.  Dysphagia;

FIEGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

f.  Rhabdomyolysis;

g.  Hyperphosphatemia;

h.  Elevated liver function tests second to rhabdomyolysis;

i.  Opioid withdrawal;

j.  Severe protein calorie malnutrition;

k.  Body pain;

l.  Pain and suffering;

m. Anxiety;

n.  Mental anguish;

o.  Emotional distress;

p.  Fright and shock;

q.  Humiliation and/or mortification;

r.  Economic loss;

s.  Medical and hospital expenses;

t.  Punitive damages;

u.  Exemplary damages;

v.  Attorneys fees and costs pursuant to 42 U.S.C. §1988;

w. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and

x.  Any other damages allowed by law.

90.    The acts and/or omissions of OAKLAND COUNTY were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of MICHAEL WILLIAMSON and Plaintiff therefore requests an award of punitive and exemplary damages against these Defendants according to proof.

91.    Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

**WHEREFORE,** Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT III
## GROSS NEGLIGENCE
## DEFENDANTS DeMEESTER, REYNA, WURFEL, NAPPE, TALIERCIO, LANCASTER, AND COUNTY OF OAKLAND

92.    Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

93.    At all relevant times, the individually named officers were acting within the course and scope of their employment with Defendant OAKLAND COUNTY.

94.    The    Oakland    County    Defendants    owed    MICHAEL WILLIAMSON the duty to provide medical care for his obviously serious medical needs.

95.    These Defendants, acting within the scope of their employment, breached this duty and were grossly negligent, as defined in MCL 691.1407(2)(c), when they acted so recklessly as to demonstrate a substantial lack of concern as to whether injury would result toward MICHAEL WILLIAMSON and with disregard for his health, safety, and constitutional and/or statutory rights.

96.    At all times relevant, the Oakland County Defendants were grossly negligent when they:

    a. Failure to properly train officers and jail personnel in the evaluation of whether a detainee needs medical treatment;

    b. Failure to provide MICHAEL WILLIAMSON with timely and/or immediate medical attention for a serious medical need;

    c. Failure to assure that MICHAEL WILLIAMSON was examined and/or treated after he exhibited signs of distress and erratic behavior as described previously;

h. Failure to assure that MICHAEL WILLIAMSON was examined and/or treated after he exhibited signs of medical episodes;

i. Failure to perform physical jail cell checks and/or otherwise abide by policies, if any, to ensure the physical well-being of detainees, specifically MICHAEL WILLIAMSON;

j. Failure to timely and/or appropriately monitor MICHAEL WILLIAMSON utilizing the video and audio monitoring equipment with which the Oakland County Jail was equipped;

k. Failure to adequately monitor the well-being of MICHAEL WILLIAMSON with knowledge that MICHAEL WILLIAMSON suffered from opioid withdrawal;

m. Failed to provide timely and/or immediate medical attention to MICHAEL WILLIAMSON;

n. Allowing MICHAEL WILLIAMSON to go with virtually no food intake knowing that he had specific medical conditions;

o. Allowing MICHAEL WILLIAMSON, an inmate with known serious health conditions to be left alone in his cell with no supervision/monitoring, or ignoring of same;

p. Allowing MICHAEL WILLIAMSON with known serious health condition to be left alone in his cell with no supervision/monitoring, or ignoring of same, while on medications with serious side effects and that create a fall risk; and

q. Any and all other breaches that become known during the course of discovery which is hereby incorporated by reference.

97. The grossly negligent acts and/or omissions of the Oakland County Defendants which directly and proximately caused MICHAEL

WILLIAMSON to suffer numerous injuries including, but not limited to the following:

    a. Toxic metabolic encephalopathy requiring ventilatory support;

    b. Aspiration pneumonia;

    c. Kidney failure requiring dialysis;

    d. Acute kidney injury second to dehydration;

    e. Dysphagia;

    f. Rhabdomyolysis;

    g. Hyperphosphatemia;

    h. Elevated liver function tests second to rhabdomyolysis;

    i. Opioid withdrawal;

    j. Severe protein calorie malnutrition;

    k. Body pain;

    l. Pain and suffering;

    m. Anxiety;

    n. Mental anguish;

    o. Emotional distress;

    p. Fright and shock;

    q. Humiliation and/or mortification;

    r. Economic loss;

FEIGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

    s. Medical and hospital expenses;

    t. Punitive damages;

    u. Exemplary damages;

    v. Attorneys fees and costs pursuant to 42 U.S.C. §1988;

    w. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and

    x. Any other damages allowed by law.

**WHEREFORE,** Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

**COUNT IV**
**MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE –**
**LIABILITY OF DEFENDANT WELLPATH**

98. Plaintiff hereby reiterates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as if fully stated herein word for word and paragraph by paragraph.

99. Pursuant to MCL 333.20141 and MCL 333.21513, Defendant WELLPATH is responsible for all phases of the operation of its medical

facility, operations, and/or practice, selection of medical staff, and quality of care rendered in its medical facility, operation, and/or practice.

100.    When presented with a patient like MICHAEL WILLIAMSON, the standard of practice required Defendant WELLPATH to provide care and treatment consistent with that of a reasonable and prudent medical facility, provider, and/or practice.

101.    When presented with a patient like MICHAEL WILLIAMSON, Defendant WELLPATH, as well as through its agents and employees, including but not limited to Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, LEE, JAREMA, and REID, had a direct duty pursuant to MCL 333.20141 and MCL 333.21513, to do all of the following, which WELLPATH failed to do, and is, therefore, negligent:

a. Provide Michael Williamson proper medical care based on his known medical history and presentation, including but not limited to appropriate observation;

b. Employ or contract with EMTs, EMT-Ps, nurse practitioners, physicians, residents, and nursing staff who possess that degree and skill of learning ordinarily possessed and exercised by practitioners of their profession in the same or similar locality;

c. Adequately supervise, direct, train, monitor and control these healthcare providers;

d. Draft, promulgate, adopt and/or enforce appropriate rules regulations, policies and procedures which would enable and engender to its healthcare providers, including but

not limited to, its EMTs, EMT-Ps, nurse practitioners, physicians and nursing staff, to render appropriate and timely treatment to patients, and ensure the adequacy of the experience level and expertise of these providers;

e. Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

f. Diligently and thoroughly document complete and accurate medical records/reports;

g. Diligently and thoroughly assess Michael Williamson's erratic behavior;

h. Recognize the risk of and eventual severe medical episode(s) caused by prolonged refusal of both food and water;

i. Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode(s) and requires emergency transport and hospitalization;

j. Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

k. Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode(s);

l. Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner EMT's, EMT-P's and/or supervisor(s);

m. Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

n. Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation;

o. Select, screen, and train qualified personnel to ensure its agents and employees are qualified and competent;

p. Enact and enforce policies and procedures intended to maximize patient safety;

q. Ensure its EMTs and EMT-Ps knew to take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to patients' symptoms.

r. Ensure its EMTs and EMT-Ps knew to take the required, necessary, appropriate and precautionary measures when presented with a patient like Michael Williamson;

s. Ensure its EMTs and EMT-Ps knew to follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

t. Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician or nurse practicing under the same circumstances;

u. Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician or nurse;

v. Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

w. Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

x. Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

y. Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

z. Refrain from other actions and/or inactions of professional negligence yet provide MICHAEL WILLIAMSON proper medical care based on his known medical history, including but not limited to appropriate observation, referral, and treatment; and

aa. Refrain from other actions and/or inactions of general negligence, gross negligence, and/or professional negligence yet to be determined.

102. At all times relevant to the care and treatment of MICHAEL WILLIAMSON, Defendant WELLPATH failed in all respects to comply with the applicable standard of practice or care and was therefore professionally negligent in its care and treatment of MICHAEL WILLIAMSON.

103.   That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, deliberate indifference and/or professional malpractice by Defendant WELLPATH, MICHAEL WILLIAMSON, sustained horrific injuries, as described herein.

104.   The above breaches of the standard of care by Defendant WELLPATH which directly and proximately caused MICHAEL WILLIAMSON to suffer numerous injuries including, but not limited to the following:

   a.   Toxic metabolic encephalopathy requiring ventilatory support;

   b.   Aspiration pneumonia;

   c.   Kidney failure requiring dialysis;

   d.   Acute kidney injury second to dehydration;

   e.   Dysphagia;

   f.   Rhabdomyolysis;

   g.   Hyperphosphatemia;

   h.   Elevated liver function tests second to rhabdomyolysis;

   i.   Acute Opioid withdrawal;

   j.   Severe protein calorie malnutrition;

   k.   Body pain;

   l.   Pain and suffering;

m. Anxiety;

n. Mental anguish;

o. Emotional distress;

p. Fright and shock;

q. Humiliation and/or mortification;

r. Economic loss;

s. Medical and hospital expenses;

t. Punitive damages;

u. Exemplary damages;

v. Attorneys fees and costs pursuant to 42 U.S.C. §1988;

w. Other damages, injuries, and consequences that are found to be related to the incident that develops during the course of discovery; and

x. Any other damages allowed by law.

**WHEREFORE,** Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT V
## MEDICAL MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE OF DEFENDANTS KELLY PAGE, R.N.; MEAGAN ALLEN, R.N.; HANNAH HESSELL CARDINALE, R.N.; KAREN KACHADURIAN, R.N.; KELLIE STAMP, R.N.; and VICARIOUS LIABILITY OF DEFENDANT WELLPATH

105. Plaintiff hereby reiterates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as if fully stated herein word for word and paragraph by paragraph.

106. The standard of care applicable to KELLY PAGE, R.N., MEAGAN ALLEN, R.N., HANNAH HESSELL CARDINALE, R.N., KAREN KACHADURIAN, R.N., KELLIE STAMP, R.N., and any other nurses involved in the care and treatment of MICHAEL WILLIAMSON, is that of a reasonable and prudent nurse, the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

107. The applicable standard of practice/care required that Defendants, PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and any nurses under their supervision involved in the care and treatment of MICHAEL WILLIAMSON, timely and appropriately do all of the following, which each failed to do, and are therefore professionally negligent:

a.  Diligently and thoroughly perform a health history and physical examination and timely and accurately document the results;

b.  Diligently and thoroughly assess, and accurately document MICHAEL WILLIAMSON's behavior;

c.  Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination;

d.  Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

e.  Diligently and thoroughly document complete and accurate medical records;

f.  Diligently and thoroughly assess Michael Williamson's erratic behavior;

g.  Recognize the risk of and eventual severe medical episode(s) caused by prolonged refusal of both food and water;

h.  Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

i.  Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

j.  Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on

himself and floor, and recognize the risk of and eventual life-threatening medical episode(s);

k. Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

l. Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

m. Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

n. Refrain from other actions and/or inactions of general negligence, gross negligence, and/or professional negligence yet to be determined.

108. At all times relevant to the care and treatment of MICHAEL WILLIAMSON, Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and any nurses under their supervision, failed in all respects to comply with the applicable standard of practice or care and were therefore professionally negligent in their care and treatment of MICHAEL WILLIAMSON.

109. That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, deliberate indifference and/or professional malpractice by Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, and STAMP, MICHAEL WILLIAMSON, sustained horrific injuries as described above.

110. The above breaches of the standard of care by Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and any nurses under their supervision were the proximate cause of MICHAEL WILLIAMSON's horrific injuries as described above.

111. Defendant WELLPATH, in addition to its liability for its own acts and omissions as set forth herein, is further liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment of MICHAEL WILLIAMSON, including, but not limited to Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, and STAMP, pursuant to the doctrines of vicarious liability and/or respondeat superior.

**WHEREFORE,** Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

**COUNT VI**
**MEDICAL MALPRACTICE/NEGLIGENCE/GROSS NEGLIGENCE**
**OF DEFENDANTS CHAD LEE, EMT and/or EMT-P;**
**MITCHELL JAREMA, EMT and/or EMT-P; and**
**MICHAEL J. REID, EMT and/or EMT-P;**
**and VICARIOUS LIABILITY OF DEFENDANT WELLPATH**

112. Plaintiff hereby reiterates and re-alleges each and every allegation contained in the preceding paragraphs of this Complaint, as if fully stated herein word for word and paragraph by paragraph.

113. The standard of care applicable to CHAD LEE, EMT and/or EMT-P, MITCHELL JAREMA, EMT and/or EMT-P, MICHAEL J. REID, EMT and/or EMT-P, and any other emergency medical technicians or paramedic-emergency medical technicians involved in the care and treatment of MICHAEL WILLIAMSON, is that of a reasonable and prudent nurse, the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

114. The applicable standard of practice/care required that Defendants, LEE, JAREMA, REID, and any other emergency medical technicians or paramedic-emergency medical technicians under their supervision involved in the care and treatment of MICHAEL WILLIAMSON, timely and appropriately do all of the following, which each failed to do, and are therefore professionally negligent:

a. Diligently and thoroughly perform a complete health history and/or physical examination, and timely and accurately document all results;

b. Diligently and thoroughly prepare and complete and accurate medical records/reports;

c. Diligently and thoroughly assess Michael Williamson's erratic behavior;

d. Recognize the risk of and eventual severe medical episode(s);

e. Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode(s) and requires emergency transport and hospitalization;

f. Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g. Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician practicing under the same circumstances;

h. Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician;

i. Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

j. Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

k. Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

l. Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

m. Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

n. Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

o. Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

p. Refrain from other actions and/or inactions of professional negligence yet to be determined.

115.   At all times relevant to the care and treatment of MICHAEL WILLIAMSON, Defendants LEE, JAREMA, REID, and any other emergency medical technicians or paramedic-emergency medical technicians under their supervision, failed in all respects to comply with the applicable standard of practice or care and were therefore professionally negligent in their care and treatment of MICHAEL WILLIAMSON.

116.   That as a direct and proximate result of the aforementioned acts of general negligence, gross negligence, deliberate indifference and/or

professional malpractice by Defendants LEE, JAREMA, and REID, MICHAEL WILLIAMSON, sustained horrific injuries as described above.

117. The above breaches of the standard of care by Defendants LEE, JAREMA, REID, and any other emergency medical technicians or paramedic-emergency medical technicians under their supervision were the proximate cause of MICHAEL WILLIAMSON's horrific injuries as described above.

118. Defendant WELLPATH, in addition to its liability for its own acts and omissions as set forth herein, is further liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment of MICHAEL WILLIAMSON, including, but not limited to Defendants LEE, JAREMA, and REID, pursuant to the doctrines of vicarious liability and/or respondeat superior.

WHEREFORE, Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT VII
## GENERAL NEGLIGENCE/GROSS NEGLIGENCE
## OF DEFENDANTS KELLY PAGE, R.N.; MEAGAN ALLEN, R.N.;
## HANNAH HESSELL CARDINALE, R.N.;
## KAREN KACHADURIAN, R.N.; KELLIE STAMP, R.N.; and
## VICARIOUS LIABILITY OF DEFENDANT WELLPATH

119. Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

120. At all times relevant hereto, Defendants, PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and Defendant WELLPATH's staff had a duty to act as a reasonably careful person would act under the same or similar circumstances that existed at the time of the subject incident.

121. At all times relevant hereto, Defendants, PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and the staff of Defendant WELLPATH owed MICHAEL WILLIAMSON the following duties in particular by the way of illustration and not limitation, and breached the same by:

    a. Diligently and thoroughly perform a health history and physical examination and timely and accurately document the results;

    b. Diligently and thoroughly assess, and accurately document MICHAEL WILLIAMSON's behavior;

    c. Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination;

FRIEDER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19500 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

d. Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

e. Diligently and thoroughly document complete and accurate medical records;

f. Diligently and thoroughly assess Michael Williamson's erratic behavior;

g. Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

h. Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

i. Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

j. Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

k. Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

l. Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

m. Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

n. Refrain from other actions and/or inactions of professional negligence yet to be determined.

129. The above-described acts of negligence and/or gross negligence by Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and/or the WELLPATH staff proximately caused MICHAEL WILLIAMSON, sustained horrific injuries as described above.

131. Defendant WELLPATH is liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment to MICHAEL WILLIAMSON, including, but not limited to Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and/or the WELLPATH staff, pursuant to the doctrines of vicarious liability and/or respondeat superior.

WHEREFORE, Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT VIII
## DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
## AGAINST DEFENDANTS KELLY PAGE, R.N.;
## MEAGAN ALLEN, R.N.; HANNAH HESSELL CARDINALE, R.N.;
## KAREN KACHADURIAN, R.N.; KELLIE STAMP, R.N.;
## and WELLPATH

122.   Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

123.   MICHAEL WILLIAMSON was subjected to a deprivation of clearly established, constitutionally protected rights and privileges secured by the Constitution of the United States.

124.   The foregoing rights were clearly established at the time of the violations.

125.   At all times mentioned herein, Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and WELLPATH were acting under color of law and/or their statutory or legal authority.

126.   At all times relevant hereto, Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and WELLPATH subjected MICHAEL WILLIAMSON to a deprivation of his rights, privileges, and immunities, as secured by the Constitution and laws of the United States and State of Michigan.

127. Pursuant to 42 U.S.C. § 1983, as well as the Eighth, and Fourteenth Amendments to the United States Constitution, Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and Defendant WELLPATH owed MICHAEL WILLIAMSON the duties to act prudently and with reasonable care, and otherwise to avoid cruel and unusual punishment.

128. Pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, the Civil Rights Acts, specifically 42 U.S.C. § 1983, a detainee like MICHAEL WILLIAMSON had the right to medical treatment for serious medical needs while in custody as well as to be free from cruel and unusual punishment.

129. The conduct described herein of Defendant WELLPATH, through Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, and STAMP, deprived MICHAEL WILLIAMSON of his clearly established rights, privileges, and immunities in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 USC § 1983.

130. Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and WELLPATH owed a duty, and specifically to MICHAEL WILLIAMSON, to act prudently, and with reasonable care in the

formulation of its policies and procedures relative to providing medical treatment to detainees, as well as to train, test, evaluate, review, and update staff to function in a reasonable manner and in conformance with the laws of the United States and the State of Michigan relative to providing detainees with the appropriate and relevant medical attention to their known and well documented medical needs.

131. Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, and STAMP violated MICHAEL WILLIAMSON's civil rights when she displayed deliberate indifference toward MICHAEL WILLIAMSON's serious medical condition, as described previously in this pleading.

132. These deprivations were caused by the customs, policies, and established practices of WELLPATH acting under color of its statutory and legal authority.

133. Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, and STAMP committed the constitutional violations herein as a result of the training and/or lack of re-training, lack of supervision, lack of direction, and lack of monitoring by Defendant WELLPATH.

134. Defendant WELLPATH failed to properly train, monitor, direct, discipline and supervise its medical staff, and knew or should have known that its medical staff, specifically Defendants PAGE, ALLEN,

CARDINALE, KACHADURIAN, and STAMP would engage in the complained of behavior.

135. In the aforementioned policies, practices, and customs of Defendant WELLPATH and its failure to properly and adequately train, monitor, instruct, direct, discipline, and supervise Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, and STAMP, Defendant WELLPATH was reckless and deliberately indifferent to a likelihood that the constitutional rights of the public, and particularly Plaintiff's decedent, would be violated.

136. This improper training, monitoring, instruction, direction, discipline, and supervision proximately caused the deprivation of MICHAEL WILLIAMSON's constitutional rights.

137. As a direct and proximal result of the unconstitutional acts and omissions of Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and WELLPATH, MICHAEL WILLIAMSON sustained the horrific injuries described above.

138. The acts and/or omissions of Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and WELLPATH violated the civil rights of MICHAEL WILLIAMSON, which directly and proximately

caused MICHAEL WILLIAMSON to sustain the horrific injuries described above.

139. The acts and/or omissions of Defendants PAGE, ALLEN, CARDINALE, KACHADURIAN, STAMP, and WELLPATH were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of MICHAEL WILLIAMSON and Plaintiff therefore requests an award of punitive and exemplary damages against these Defendants according to proof.

140. Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

WHEREFORE, Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

FEDGER LAW • A PROFESSIONAL CORPORATION • ATTORNEYS AND COUNSELORS AT LAW • 19390 WEST TEN MILE ROAD • SOUTHFIELD, MICHIGAN 48075-2463 • TELEPHONE (248) 355-5555 • FAX (248) 355-5148

## COUNT IX
## GENERAL NEGLIGENCE/GROSS NEGLIGENCE
## OF DEFENDANTS CHAD LEE, EMT and/or EMT-P;
## MITCHELL JAREMA, EMT and/or EMT-P;
## MICHAEL J. REID, EMT and/or EMT-P; and
## VICARIOUS LIABILITY OF DEFENDANT WELLPATH

141. Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

142. At all times relevant hereto, Defendants, LEE, JAREMA, REID, and Defendant WELLPATH's staff had a duty to act as a reasonably careful person would act under the same or similar circumstances that existed at the time of the subject incident.

143. At all times relevant hereto, Defendants, LEE, JAREMA, REID, and the staff of Defendant WELLPATH owed MICHAEL WILLIAMSON the following duties in particular by the way of illustration and not limitation, and breached the same by:

   a. Diligently and thoroughly perform a complete health history and/or physical examination, and timely and accurately document all results;

   b. Diligently and thoroughly prepare and complete and accurate medical records/reports;

   c. Diligently and thoroughly assess Michael Williamson's erratic behavior;

   d. Recognize the risk of and eventual severe medical episode(s);

e. Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode(s) and requires emergency transport and hospitalization;

f. Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g. Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician practicing under the same circumstances;

h. Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician;

i. Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

j. Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

k. Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

l. Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

m. Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity,

nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

n. Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

o. Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

p. Refrain from other actions and/or inactions of professional negligence yet to be determined.

144.     The above-described acts of negligence and/or gross negligence by Defendants LEE, JAREMA, REID, and/or the WELLPATH staff proximately caused MICHAEL WILLIAMSON to sustain the horrific injuries as described above.

145.     Defendant WELLPATH is liable for the acts and omissions of its agents, ostensible agents, servants, and/or employees who rendered care and treatment to MICHAEL WILLIAMSON, including, but not limited to Defendants LEE, JAREMA, REID, and/or the WELLPATH staff, pursuant to the doctrines of vicarious liability and/or respondeat superior.

WHEREFORE, Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand

($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

## COUNT X
## DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
## AGAINST DEFENDANTS CHAD LEE, EMT and/or EMT-P;
## MITCHELL JAREMA, EMT and/or EMT-P;
## MICHAEL J. REID, EMT and/or EMT-P;
## and WELLPATH

146. Plaintiff hereby reincorporates and restates each and every allegation contained in the preceding paragraphs of this Complaint as if set forth herein.

147. MICHAEL WILLIAMSON was subjected to a deprivation of clearly established, constitutionally protected rights and privileges secured by the Constitution of the United States.

148. The foregoing rights were clearly established at the time of the violations.

149. At all times mentioned herein, Defendants LEE, JAREMA, REID, and WELLPATH were acting under color of law and/or their statutory or legal authority.

150. At all times relevant hereto, Defendants LEE, JAREMA, REID, and WELLPATH subjected MICHAEL WILLIAMSON to a deprivation of his rights, privileges, and immunities, as secured by the Constitution and laws of the United States and State of Michigan.

{01176128.DOCX}                                              59

151. Pursuant to 42 U.S.C. § 1983, as well as the Eighth, and Fourteenth Amendments to the United States Constitution, Defendants LEE, JAREMA, REID, and Defendant WELLPATH owed MICHAEL WILLIAMSON the duties to act prudently and with reasonable care, and otherwise to avoid cruel and unusual punishment.

152. Pursuant to the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, the Civil Rights Acts, specifically 42 U.S.C. § 1983, a detainee like MICHAEL WILLIAMSON had the right to medical treatment for serious medical needs while in custody as well as to be free from cruel and unusual punishment.

153. The conduct described herein of Defendant WELLPATH, through Defendant LEE, JAREMA, and REID, deprived MICHAEL WILLIAMSON of his clearly established rights, privileges, and immunities in violation of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and 42 USC § 1983.

154. Defendants LEE, JAREMA, REID, and WELLPATH owed a duty, and specifically to MICHAEL WILLIAMSON, to act prudently, and with reasonable care in the formulation of its policies and procedures relative to providing medical treatment to detainees, as well as to train, test, evaluate, review, and update staff to function in a reasonable manner and in

conformance with the laws of the United States and the State of Michigan relative to providing detainees with the appropriate and relevant medical attention to their known and well documented medical needs.

155.  Defendants LEE, JAREMA, and REID violated MICHAEL WILLIAMSON's civil rights when she displayed deliberate indifference toward MICHAEL WILLIAMSON's serious medical condition, as described previously in this pleading.

156.  These deprivations were caused by the customs, policies, and established practices of WELLPATH acting under color of its statutory and legal authority.

157.  Defendants LEE, JAREMA, and REID committed the constitutional violations herein as a result of the training and/or lack of re-training, lack of supervision, lack of direction, and lack of monitoring by Defendant WELLPATH.

158.  Defendant WELLPATH failed to properly train, monitor, direct, discipline and supervise its medical staff, and knew or should have known that its medical staff, specifically Defendants LEE, JAREMA, and REID would engage in the complained of behavior.

159.  In the aforementioned policies, practices, and customs of Defendant WELLPATH and its failure to properly and adequately train,

monitor, instruct, direct, discipline, and supervise Defendants LEE, JAREMA, and REID, Defendant WELLPATH was reckless and deliberately indifferent to a likelihood that the constitutional rights of the public, and particularly Plaintiff's decedent, would be violated.

160. This improper training, monitoring, instruction, direction, discipline, and supervision proximately caused the deprivation of MICHAEL WILLIAMSON's constitutional rights.

161. As a direct and proximal result of the unconstitutional acts and omissions of Defendants LEE, JAREMA, REID, and WELLPATH, MICHAEL WILLIAMSON sustained the horrific injuries described above.

162. The acts and/or omissions of Defendants LEE, JAREMA, REID, and WELLPATH violated the civil rights of MICHAEL WILLIAMSON, which directly and proximately caused MICHAEL WILLIAMSON to sustain the horrific injuries described above.

163. The acts and/or omissions of Defendants LEE, JAREMA, REID, and WELLPATH were willful, wanton, reckless, malicious, oppressive and/or done with a conscious or reckless disregard for the rights of MICHAEL WILLIAMSON and Plaintiff therefore requests an award of punitive and exemplary damages against these Defendants according to proof.

164. Plaintiff has retained private counsel to represent him in this matter and is entitled to an award of attorney fees and costs.

WHEREFORE, Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, respectfully requests this Honorable Court enter a judgment in her favor against all Defendants and award an amount in excess of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of costs, interest, and attorney fees, as well as an award for punitive damages.

Respectfully submitted,

**FIEGER,   FIEGER,   KENNEY   & HARRINGTON, P.C.**

By: */s/ David A. Dworetsky*
DAVID A. DWORETSKY (P67026)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555

Dated: September 30, 2021

(01176128.DOCX)                                    63

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

GAYLE DANIELS, as Guardian
of MICHAEL WILLIAMSON, a
Legally Incapacitated Person,

     Plaintiff,

v.

COUNTY OF OAKLAND; DEPUTY
DAYNA DeMEESTER; DEPUTY JOSHUA
WURFEL; DEPUTY DONALD NAPPE;
DEPUTY MICHAEL REYNA; DEPUTY
ANTHONY TALIERCIO; and
DEPUTY MICHAEL LANCASTER;
in Their Individual and Official Capacities;
WELLPATH LLC, f/k/a Correct Care Solutions, LLC;
KELLY PAGE, R.N.; MEAGAN ALLEN, R.N.;
HANNAH HESSELL CARDINALE, R.N.;
KAREN KACHADURIAN, R.N.; KELLIE STAMP, R.N.;
CHAD LEE, EMT and/or EMT-P; MITCHELL
JAREMA, EMT and/or EMT-P; and
MICHAEL J. REID, EMT and/or EMT-P;
jointly and severally.

     Defendants.

Case No
Hon.

GEOFFREY N. FIEGER (P30441)
DAVID A. DWORETSKY (P67026)
*Fieger, Fieger, Kenney & Harrington, P.C.*
Attorneys for Plaintiff
19390 W. Ten Mile Road
Southfield, MI 48075
(248) 355-5555
d.dworetsky@fiegerlaw.com

## DEMAND FOR JURY TRIAL

{01176128.DOCX}     64

**NOW COMES**, Plaintiff, GAYLE DANIELS, as Guardian of MICHAEL WILLIAMSON, a Legally Incapacitated Person, by and through her attorneys, *FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.,* and hereby demands a trial by jury in the above-captioned matter.

Respectfully submitted,

*FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.*

By: */s/ David A. Dworetsky*
DAVID A. DWORETSKY (P67026)
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555

Dated: September 30, 2021

<u>AFFIDAVIT OF MERITORIOUS CLAIM OF FREDERICK H. ELLINGER JR. NRP
PURSUANT TO MCL 600.2912d</u>

STATE OF PENNSYLVANIA )
                         ) ss
COUNTY OF  MONTGOMERY )

      I hereby certify that I have reviewed the Notice of Intent to File Claim and all records supplied by the Plaintiff's attorney concerning the allegations contained in the Notice.  I am a certified emergency medical technician/paramedic and during the year immediately preceding the date of the occurrence that is the basis for this action, I devoted a majority of my professional time to my career as an Emergency Medical Technician/Paramedic.  I further reserve the right to add or amend this Affidavit as additional information becomes available.  My opinions are preliminary because I have not reviewed any deposition testimony and may not have reviewed complete medical records. I, therefore, reserve the right to amend and supplement my opinions after reviewing any additional materials submitted to me.

A.      <u>THE APPLICABLE STANDARD OF PRACTICE AND CARE:</u>

1.      **Chad Lee, EMT and/or EMT-P,** and any emergency medical technician or paramedic-emergency medical technician acting under his supervision, the applicable standard of practice is that of a reasonable and prudent emergency medical technician and/or paramedic-emergency medical technician. When presented with a patient such as Michael Williamson, the standard of practice required Chad Lee, and any emergency medical technician or paramedic-emergency medical technician under his supervision, to timely and appropriately:

           a.    Diligently and thoroughly perform a complete health history and/or physical examination, and timely and accurately document all results;

{01130122.DOCX}

b.      Diligently and thoroughly prepare and complete and accurate medical records/reports;

c.      Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.      Recognize the risk of and eventual severe medical episode;

e.      Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.      Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.      Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician practicing under the same circumstances;

h.      Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician;

i.      Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

j.      Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

k.      Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

l.      Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

m.      Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

n.     Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

o.     Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

p.     Refrain from other actions and/or inactions of professional negligence yet to be determined.

2.     **Mitchell Jarema, EMT and/or EMT-P,** and any emergency medical technician or paramedic-emergency medical technician acting under his supervision, the applicable standard of practice is that of a reasonable and prudent emergency medical technician and/or paramedic-emergency medical technician. When presented with a patient such as Michael Williamson, the standard of practice required Mitchell Jarema, and any emergency medical technician or paramedic-emergency medical technician under his supervision, to timely and appropriately:

a.     Diligently and thoroughly perform a complete health history and/or physical examination, and timely and accurately document all results;

b.     Diligently and thoroughly prepare and complete and accurate medical records/reports;

c.     Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.     Recognize the risk of and eventual severe medical episode;

e.     Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.     Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.     Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician practicing under the same circumstances;

{01130122.DOCX}

h.   Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician;

i.   Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

j.   Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

k.   Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

l.   Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

m.   Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

n.   Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

o.   Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

p.   Refrain from other actions and/or inactions of professional negligence yet to be determined.

3.   **Michael J. Reid, EMT and/or EMT-P,** and any emergency medical technician or paramedic-emergency medical technician acting under his supervision, the applicable standard of practice is that of a reasonable and prudent emergency medical technician and/or paramedic-emergency medical technician. When presented with a patient such as Michael Williamson, the standard of practice required Michael J. Reid, and any emergency

{01130122.DOCX}

medical technician or paramedic-emergency medical technician under his supervision, to

timely and appropriately:

a. Diligently and thoroughly perform a complete health history and/or physical examination, and timely and accurately document all results;

b. Diligently and thoroughly prepare and complete and accurate medical records/reports;

c. Diligently and thoroughly assess Michael Williamson's erratic behavior;

d. Recognize the risk of and eventual severe medical episode;

e. Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f. Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g. Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician practicing under the same circumstances;

h. Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician;

i. Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

j. Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

k. Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

l. Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

m. Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

n. Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

o. Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

p. Refrain from other actions and/or inactions of professional negligence yet to be determined.

4. The standard of care applicable to **Wellpath LLC,** by and through its agents, ostensible agents, assignees, representatives and employees, including but not limited to EMTs, EMT-Ps, RNs, LPNs, nursing assistants, nurse practitioners, and caregivers, including but not limited to the individuals listed above and herein, is the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

At a minimum, Wellpath LLC, by and through its ostensible agents, assigns, representatives and employees, including but not limited to EMTs, EMT-Ps, RNs, LPNs, nursing assistants, nurse practitioners, and caregivers, had a duty, statutory and otherwise, to:

a. Provide Michael Williamson proper medical care based on his known medical history and presentation, including but not limited to appropriate observation.

b. Employ or contract with EMTs, EMT-Ps, nurse practitioners, physicians, residents, and nursing staff who possess that degree and skill of learning ordinarily possessed and exercised by practitioners of their profession in the same or similar locality;

c. Adequately supervise, direct, train, monitor and control these healthcare providers;

{01130122.DOCX}

d.   Draft, promulgate, adopt and/or enforce appropriate rules regulations, policies and procedures which would enable and engender to its healthcare providers, including but not limited to, its EMTs, EMT-Ps, nurse practitioners, physicians and nursing staff, to render appropriate and timely treatment to patients, and ensure the adequacy of the experience level and expertise of these providers;

e.   Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

f.   Diligently and thoroughly document complete and accurate medical records/reports;

g.   Diligently and thoroughly assess Michael Williamson's erratic behavior;

h.   Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

i.   Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

j.   Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

k.   Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

l.   Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

m.   Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

n.   Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation;

o.   Select, screen and train qualified personnel to ensure its agents and employees are qualified and competent;

{01130122.DOCX}

p.   Enact and enforce policies and procedures intended to maximize patient safety;

q.   Ensure its EMTs and EMT-Ps knew to take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to patients' symptoms.

r.   Ensure its EMTs and EMT-Ps knew to take the required, necessary, appropriate and precautionary measures when presented with a patient like Michael Williamson;

s.   Ensure its EMTs and EMT-Ps knew to follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

t.   Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician or nurse practicing under the same circumstances;

u.   Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician or nurse;

v.   Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

w.   Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

x.   Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

y.   Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP"); and

z.   Refrain from other actions and/or inactions of professional negligence yet to be determined.

{01130122.DOCX}

B.    <u>THE MANNER IN WHICH IT IS CLAIMED THAT THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS BREACHED BY THE HEALTH PROFESSIONAL OR HEALTH FACILITY</u>:

1.    **Chad Lee, EMT and/or EMT-P** breached the standard of care by failing to do the following:

     a.   Diligently and thoroughly perform a complete health history and/or physical examination, and timely and accurately document all results;

     b.   Diligently and thoroughly prepare and complete and accurate medical records/reports;

     c.   Diligently and thoroughly assess Michael Williamson's erratic behavior;

     d.   Recognize the risk of and eventual severe medical episode;

     e.   Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

     f.   Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

     g.   Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician practicing under the same circumstances;

     h.   Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician;

     i.   Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

     j.   Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

     k.   Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

l.    Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

m.    Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

n.    Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

o.    Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

p.    Refrain from other actions and/or inactions of professional negligence yet to be determined.

2.    **Mitchell Jarema, EMT and/or EMT-P** breached the standard of care by failing to do the following:

a.    Diligently and thoroughly perform a complete health history and/or physical examination, and timely and accurately document all results;

b.    Diligently and thoroughly prepare and complete and accurate medical records/reports;

c.    Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.    Recognize the risk of and eventual severe medical episode;

e.    Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.    Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.    Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician practicing under the same circumstances;

{01130122.DOCX}

h.     Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician;

i.     Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

j.     Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

k.     Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

l.     Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

m.     Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

n.     Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

o.     Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

p.     Refrain from other actions and/or inactions of professional negligence yet to be determined.

3.     **Michael J. Reid, EMT and/or EMT-P** breached the standard of care by failing to do the following:

a.     Diligently and thoroughly perform a complete health history and/or physical examination, and timely and accurately document all results;

b.     Diligently and thoroughly prepare and complete and accurate medical records/reports;

c.     Diligently and thoroughly assess Michael Williamson's erratic behavior;

{01130122.DOCX}

d.   Recognize the risk of and eventual severe medical episode;

e.   Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.   Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.   Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician practicing under the same circumstances;

h.   Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician;

i.   Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

j.   Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

k.   Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

l.   Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

m.   Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

n.   Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

o.   Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

{01130122.DOCX}

p.   Refrain from other actions and/or inactions of professional negligence yet to be determined.

4.   **Wellpath LLC**, by and through its agents, ostensible agents, assignees, representatives and employees, including but not limited to EMTs, EMT-Ps, RNs, LPNs, nursing assistants, nurse practitioners, and caregivers, including but not limited to the individuals listed above and herein, breached the standard of care by failing to do the following:

a.   Provide Michael Williamson proper medical care based on his known medical history and presentation, including but not limited to appropriate observation.

b.   Employ or contract with EMTs, EMT-Ps, nurse practitioners, physicians, residents, and nursing staff who possess that degree and skill of learning ordinarily possessed and exercised by practitioners of their profession in the same or similar locality;

c.   Adequately supervise, direct, train, monitor and control these healthcare providers;

d.   Draft, promulgate, adopt and/or enforce appropriate rules regulations, policies and procedures which would enable and engender to its healthcare providers, including but not limited to, its EMTs, EMT-Ps, nurse practitioners, physicians and nursing staff, to render appropriate and timely treatment to patients, and ensure the adequacy of the experience level and expertise of these providers;

e.   Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

f.   Diligently and thoroughly document complete and accurate medical records/reports;

g.   Diligently and thoroughly assess Michael Williamson's erratic behavior;

h.   Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

i.   Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a

patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

j.  Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

k.  Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

l.  Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

m.  Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

n.  Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation;

o.  Select, screen and train qualified personnel to ensure its agents and employees are qualified and competent;

p.  Enact and enforce policies and procedures intended to maximize patient safety;

q.  Ensure its EMTs and EMT-Ps knew to take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to patients' symptoms.

r.  Ensure its EMTs and EMT-Ps knew to take the required, necessary, appropriate and precautionary measures when presented with a patient like Michael Williamson;

s.  Ensure its EMTs and EMT-Ps knew to follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

t.  Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician or nurse practicing under the same circumstances;

{01130122.DOCX}

u.   Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician or nurse;

v.   Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

w.   Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

x.   Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

y.   Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP"); and

z.   Refrain from other actions and/or inactions of professional negligence yet to be determined.

## C.   THE ACTION WHICH SHOULD HAVE BEEN TAKEN TO ACHIEVE COMPLIANCE WITH THE STANDARD PRACTICE OR CARE:

1.   At a minimum, in order to have achieved compliance with the applicable standard care,

Chad Lee, EMT and/or EMT-P should have done the following:

a.   Diligently and thoroughly perform a complete health history and/or physical examination, and timely and accurately document all results;

b.   Diligently and thoroughly prepare and complete and accurate medical records/reports;

c.   Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.   Recognize the risk of and eventual severe medical episode;

e.   Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.   Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

{01130122.DOCX}

g.   Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician practicing under the same circumstances;

h.   Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician;

i.   Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

j.   Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

k.   Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

l.   Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

m.   Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

n.   Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

o.   Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

p.   Refrain from other actions and/or inactions of professional negligence yet to be determined.

2.   At a minimum, in order to have achieved compliance with the applicable standard care,

**Mitchell Jarema, EMT and/or EMT-P Page** should have done the following:

a.   Diligently and thoroughly perform a complete health history and/or physical examination, and timely and accurately document all results;

b.   Diligently and thoroughly prepare and complete and accurate medical records/reports;

c.   Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.   Recognize the risk of and eventual severe medical episode;

e.   Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.   Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.   Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician practicing under the same circumstances;

h.   Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician;

i.   Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

j.   Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

k.   Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

l.   Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

m.   Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

{01130122.DOCX}

n.  Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

o.  Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

p.  Refrain from other actions and/or inactions of professional negligence yet to be determined.

3.  At a minimum, in order to have achieved compliance with the applicable standard care,

**Michael J. Reid, EMT and/or EMT-P** should have done the following:

a.  Diligently and thoroughly perform a complete health history and/or physical examination, and timely and accurately document all results;

b.  Diligently and thoroughly prepare and complete and accurate medical records/reports;

c.  Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.  Recognize the risk of and eventual severe medical episode;

e.  Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.  Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.  Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician practicing under the same circumstances;

h.  Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician;

i.  Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

j.     Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

k.     Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

l.     Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

m.     Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

n.     Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

o.     Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

p.     Refrain from other actions and/or inactions of professional negligence yet to be determined.

4.     At a minimum, in order to have achieved compliance with the applicable standard care, **Wellpath LLC**, by and through its agents ostensible agents, assignees, representatives and employees, including but not limited to EMTs, EMT-Ps, RNs, LPNs, nursing assistants, nurse practitioners, and caregivers, including but not limited to the individuals listed above and herein, should have done the following:

a.     Provide Michael Williamson proper medical care based on his known medical history and presentation, including but not limited to appropriate observation.

b.     Employ or contract with EMTs, EMT-Ps, nurse practitioners, physicians, residents, and nursing staff who possess that degree and skill of learning ordinarily possessed and exercised by practitioners of their profession in the same or similar locality;

c.     Adequately supervise, direct, train, monitor and control these healthcare providers;

d.  Draft, promulgate, adopt and/or enforce appropriate rules regulations, policies and procedures which would enable and engender to its healthcare providers, including but not limited to, its EMTs, EMT-Ps, nurse practitioners, physicians and nursing staff, to render appropriate and timely treatment to patients, and ensure the adequacy of the experience level and expertise of these providers;

e.  Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

f.  Diligently and thoroughly document complete and accurate medical records/reports;

g.  Diligently and thoroughly assess Michael Williamson's erratic behavior;

h.  Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

i.  Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

j.  Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

k.  Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

l.  Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

m.  Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

n.  Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation;

o.  Select, screen and train qualified personnel to ensure its agents and employees are qualified and competent;

p.    Enact and enforce policies and procedures intended to maximize patient safety;

q.    Ensure its EMTs and EMT-Ps knew to take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to patients' symptoms.

r.    Ensure its EMTs and EMT-Ps knew to take the required, necessary, appropriate and precautionary measures when presented with a patient like Michael Williamson;

s.    Ensure its EMTs and EMT-Ps knew to follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

t.    Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician or nurse practicing under the same circumstances;

u.    Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician or nurse;

v.    Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

w.    Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

x.    Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

y.    Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP"); and

z.    Refrain from other actions and/or inactions of professional negligence yet to be determined.

**D.**     <u>**THE MANNER IN WHICH THE BREACH OF THE APPLICABLE STANDARD**</u>
    <u>**OF PRACTICE OR CARE WAS THE PROXIMATE CAUSE OF THE INJURY**</u>
    <u>**ALLEGED IN THE NOTICE:**</u>

The above-described breaches of the standard of care by Wellpath LLC and its staff, including but not limited to its employees, agents, ostensible agents, nurses, nurse aids, nurse assistants, nurse practitioners, physicians, EMTs, EMT-Ps, including but not limited to those identified above and herein, including but not limited to Chad Lee, Mitchell Jarema, and Michael J. Reid, and Wellpath LLC itself were the proximate cause of Michael Williamson's life-threatening injuries. Such injuries include, but are not limited to, toxic metabolic encephalopathy requiring ventilatory support, aspiration pneumonia, acute kidney injury second to dehydration, kidney failure requiring dialysis, dysphagia, rhabdomyolysis, hyperphosphatemia, elevated liver function tests secondary to rhabdomyolysis, heroin withdrawal, and severe protein calorie malnutrition. His injuries required lengthy in-patient and outpatient rehabilitation and treatment, and he still has difficulty walking, despite intensive physical therapy including subacute rehabilitation. He still has essentially zero toe movement, with significant paresthesia of the bilateral lower extremities, and remains totally disabled. He has also sustained significant short-term memory loss. While the PEG tube was ultimately removed, he continues to treat as a result of his ventilatory respiratory failure, multiorgan failure, altered mental status, aspiration pneumonia, and rhabdomyolysis.

Michael Williamson has suffered emotional distress, humiliation, depression, loss of enjoyment of life and other damages, all of which are past, present and future. The negligence as described above has caused him to expend or have to expend on his behalf a substantial amount of money for medical expenses, as well as all economic loss/damages as a result of the above-described negligence.

The joint and several negligence of the aforementioned healthcare providers created a foreseeable risk of injury to Michael Williamson. But for the joint and several negligence of the aforementioned healthcare providers, the injuries suffered by Michael Williamson would have been prevented.

FREDERICK H. ELLINGER JR. NRP

Subscribed and sworn to before me
this 27 day of _September_, 2021

Notary Public
County of _Montgomery_.

State of _Pennsylvania_

My Commission Expires: _6/8/2024_

Commonwealth of Pennsylvania - Notary Seal
Victoria S. Trost, Notary Public
Montgomery County
My commission expires June 8, 2024
Commission number 1168753
Member, Pennsylvania Association of Notaries

{01130122.DOCX}

<u>**AFFIDAVIT OF MERITORIOUS CLAIM OF TRACEY J. CHRISTY, RN, BSN**</u>
**PURSUANT TO MCL 600.2912d**

STATE OF MICHIGAN    )
                   ) ss
COUNTY OF ST. Clair )

    I hereby certify that I have reviewed the Notice of Intent to File Claim and all medical records supplied by the Plaintiff's attorney concerning the allegations contained in the Notice.  I am a licensed registered nurse, and during the year immediately preceding the date of the occurrence that is the basis for this action, I devoted a majority of my professional time to the active clinical practice of nursing.  I further reserve the right to add or amend this Affidavit as additional information becomes available.  My opinions are preliminary because I have not reviewed any deposition testimony and may not have reviewed complete medical records. I, therefore, reserve the right to amend and supplement my opinions after reviewing any additional materials submitted to me.

**A.**    <u>**THE APPLICABLE STANDARD OF CARE OR PRACTICE**</u>

1.    **Nurse Kelly Page** and any nurse acting under her supervision, the applicable standard of practice is that of a reasonable and prudent nurse. When presented with a patient such as Michael Williamson, the standard of practice required Nurse Kelly Page, and any nurses under her supervision, to timely and appropriately:

    a.    Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

    b.    Diligently and thoroughly document complete and accurate medical records;

    c.    Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.    Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

e.    Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.    Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.    Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

h.    Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

i.    Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

j.    Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

k.    Refrain from other actions and/or inactions of professional negligence yet to be determined.

2.   **Nurse Hannah Hessell Cardinale,** and any nurse acting under her supervision, the applicable standard of practice is that of a reasonable and prudent nurse. When presented with a patient such as Michael Williamson, the standard of practice required Nurse Hannah Hessell Cardinale, and any nurses under her supervision, to timely and appropriately:

a.    Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

b.    Diligently and thoroughly document complete and accurate medical records;

c.    Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.  Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

e.  Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.  Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.  Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

h.  Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

i.  Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

j.  Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

k.  Refrain from other actions and/or inactions of professional negligence yet to be determined.

3.  **Nurse Karen Kachadurian,** and any nurse acting under her supervision, the applicable standard of practice is that of a reasonable and prudent nurse. When presented with a patient such as Michael Williamson, the standard of practice required Nurse Karen Kachadurian, and any nurses under her supervision, to timely and appropriately:

a.  Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

b.  Diligently and thoroughly document complete and accurate medical records;

c.   Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.   Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

e.   Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.   Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.   Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

h.   Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

i.   Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

j.   Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

k.   Refrain from other actions and/or inactions of professional negligence yet to be determined.

4.   **Nurse Meagan Rose Allen,** and any nurse acting under her supervision, the applicable standard of practice is that of a reasonable and prudent nurse. When presented with a patient such as Michael Williamson, the standard of practice required Nurse Meagan Rose Allen, and any nurses under her supervision, to timely and appropriately:

a.   Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

b.   Diligently and thoroughly document complete and accurate medical records;

c.    Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.    Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

e.    Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.    Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.    Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

h.    Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

i.    Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

j.    Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

k.    Refrain from other actions and/or inactions of professional negligence yet to be determined.

5.    **Nurse Kellie Stamp,** and any nurse acting under her supervision, the applicable standard of practice is that of a reasonable and prudent nurse. When presented with a patient such as Michael Williamson, the standard of practice required Nurse Kellie Stamp, and any nurses under her supervision, to timely and appropriately:

a.    Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

b. Diligently and thoroughly document complete and accurate medical records;

c. Diligently and thoroughly assess Michael Williamson's erratic behavior;

d. Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

e. Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f. Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g. Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself ' and floor, and recognize the risk of and eventual life-threatening medical episode;

h. Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

i. Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

j. Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

k. Refrain from other actions and/or inactions of professional negligence yet to be determined.

6. The standard of care applicable to **Wellpath LLC**, by and through its agents, ostensible agents, assignees, representatives and employees, including but not limited to EMTs, EMT-Ps, RNs, LPNs, nursing assistants, nurse practitioners, and caregivers, including but not limited to the individuals listed above and herein, is the skill and care ordinarily possessed and exercised by practitioners of their profession in the same or similar localities.

At a minimum, Wellpath LLC, by and through its agents, ostensible agents, assigns, representatives and employees, including but not limited to EMTs, EMT-Ps, RNs, LPNs, nursing assistants, nurse practitioners, and caregivers, had a duty, statutory and otherwise, to:

a.   Provide Michael Williamson proper medical care based on his known medical history and presentation, including but not limited to appropriate observation.

b.   Employ or contract with EMTs, EMT-Ps, nurse practitioners, physicians, residents, and nursing staff who possess that degree and skill of learning ordinarily possessed and exercised by practitioners of their profession in the same or similar locality;

c.   Adequately supervise, direct, train, monitor and control these healthcare providers;

d.   Draft, promulgate, adopt and/or enforce appropriate rules regulations, policies and procedures which would enable and engender to its healthcare providers, including but not limited to, its EMTs, EMT-Ps, nurse practitioners, physicians and nursing staff, to render appropriate and timely treatment to patients, and ensure the adequacy of the experience level and expertise of these providers;

e.   Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

f.   Diligently and thoroughly document complete and accurate medical records/reports;

g.   Diligently and thoroughly assess Michael Williamson's erratic behavior;

h.   Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

i.   Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

j.      Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

k.      Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

l.      Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

m.      Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

n.      Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation;

o.      Select, screen and train qualified personnel to ensure its agents and employees are qualified and competent;

p.      Enact and enforce policies and procedures intended to maximize patient safety;

q.      Ensure its EMTs and EMT-Ps knew to take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to patients' symptoms.

r.      Ensure its EMTs and EMT-Ps knew to take the required, necessary, appropriate and precautionary measures when presented with a patient like Michael Williamson;

s.      Ensure its EMTs and EMT-Ps knew to follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

t.      Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician or nurse practicing under the same circumstances;

u.      Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician or nurse;

v.   Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

w.   Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

x.   Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

y.   Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP"); and

z.   Refrain from other actions and/or inactions of professional negligence yet to be determined.

**B.   THE MANNER IN WHICH IT IS CLAIMED THAT THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS BREACHED BY THE HEALTH PROFESSIONAL OR HEALTH FACILITY:**

1.   **Nurse Kelly Page** breached the standard of care by failing to do the following:

a.   Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

b.   Diligently and thoroughly document complete and accurate medical records;

c.   Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.   Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

e.   Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.   Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.   Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

h.   Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

i.   Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

j.   Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

k.   Refrain from other actions and/or inactions of professional negligence yet to be determined.

2.   **Nurse Hannah Hessell Cardinale** breached the standard of care by failing to do the following:

a.   Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

b.   Diligently and thoroughly document complete and accurate medical records;

c.   Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.   Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

e.   Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.   Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.   Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself

and floor, and recognize the risk of and eventual life-threatening medical episode;

h.   Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

i.   Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

j.   Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

k.   Refrain from other actions and/or inactions of professional negligence yet to be determined.

3.   **Nurse Karen Kachadurian** breached the standard of care by failing to do the following:

a.   Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

b.   Diligently and thoroughly document complete and accurate medical records;

c.   Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.   Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

e.   Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.   Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.   Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

h.   Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

    i.     Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

    j.     Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

    k.     Refrain from other actions and/or inactions of professional negligence yet to be determined.

**4.**    **Nurse Meagan Rose Allen** breached the standard of care by failing to do the following:

    a.     Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

    b.     Diligently and thoroughly document complete and accurate medical records;

    c.     Diligently and thoroughly assess Michael Williamson's erratic behavior;

    d.     Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

    e.     Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

    f.     Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

    g.     Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

    h.     Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

    i.     Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

    j.       Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

    k.       Refrain from other actions and/or inactions of professional negligence yet to be determined.

5.    **Nurse Kellie Stamp** breached the standard of care by failing to do the following:

    a.       Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

    b.       Diligently and thoroughly document complete and accurate medical records;

    c.       Diligently and thoroughly assess Michael Williamson's erratic behavior;

    d.       Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

    e.       Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

    f.       Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

    g.       Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

    h.       Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

    i.       Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

    j.       Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

    k.       Refrain from other actions and/or inactions of professional negligence yet to be determined.

6.    **Wellpath LLC,** by and through its agents, ostensible agents, assignees, representatives and employees, including but not limited to EMTs, EMT-Ps, RNs, LPNs, nursing assistants, nurse practitioners, and caregivers, including but not limited to the individuals listed above and herein, breached the standard of care by failing to do the following:

    a.    Provide Michael Williamson proper medical care based on his known medical history and presentation, including but not limited to appropriate observation.

    b.    Employ or contract with EMTs, EMT-Ps, nurse practitioners, physicians, residents, and nursing staff who possess that degree and skill of learning ordinarily possessed and exercised by practitioners of their profession in the same or similar locality;

    c.    Adequately supervise, direct, train, monitor and control these healthcare providers;

    d.    Draft, promulgate, adopt and/or enforce appropriate rules regulations, policies and procedures which would enable and engender to its healthcare providers, including but not limited to, its EMTs, EMT-Ps, nurse practitioners, physicians and nursing staff, to render appropriate and timely treatment to patients, and ensure the adequacy of the experience level and expertise of these providers;

    e.    Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

    f.    Diligently and thoroughly document complete and accurate medical records/reports;

    g.    Diligently and thoroughly assess Michael Williamson's erratic behavior;

    h.    Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

    i.    Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

j.   Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

k.   Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

l.   Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

m.   Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

n.   Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation;

o.   Select, screen and train qualified personnel to ensure its agents and employees are qualified and competent;

p.   Enact and enforce policies and procedures intended to maximize patient safety;

q.   Ensure its EMTs and EMT-Ps knew to take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to patients' symptoms.

r.   Ensure its EMTs and EMT-Ps knew to take the required, necessary, appropriate and precautionary measures when presented with a patient like Michael Williamson;

s.   Ensure its EMTs and EMT-Ps knew to follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

t.   Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician or nurse practicing under the same circumstances;

u.   Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician or nurse;

{01174306.DOCX}                              15

v.    Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

w.    Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

x.    Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

y.    Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP"); and

z.    Refrain from other actions and/or inactions of professional negligence yet to be determined.

C.    **THE ACTION WHICH SHOULD HAVE BEEN TAKEN TO ACHIEVE COMPLIANCE WITH THE STANDARD PRACTICE OR CARE:**

1.    At a minimum, in order to have achieved compliance with the applicable standard care,

**Nurse Kelly Page** should have done the following:

a.    Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

b.    Diligently and thoroughly document complete and accurate medical records;

c.    Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.    Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

e.    Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.    Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

    g.    Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

    h.    Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

    i.    Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

    j.    Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

    k.    Refrain from other actions and/or inactions of professional negligence yet to be determined.

2.    At a minimum, in order to have achieved compliance with the applicable standard care,

**Nurse Hannah Hessell Cardinale** should have done the following:

    a.    Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

    b.    Diligently and thoroughly document complete and accurate medical records;

    c.    Diligently and thoroughly assess Michael Williamson's erratic behavior;

    d.    Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

    e.    Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

    f.    Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

    g.    Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself

and floor, and recognize the risk of and eventual life-threatening medical episode;

h. Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

i. Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

j. Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

k. Refrain from other actions and/or inactions of professional negligence yet to be determined.

3. At a minimum, in order to have achieved compliance with the applicable standard care,

**Nurse Karen Kachadurian** should have done the following:

a. Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

b. Diligently and thoroughly document complete and accurate medical records;

c. Diligently and thoroughly assess Michael Williamson's erratic behavior;

d. Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

e. Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f. Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g. Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

h.    Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

i.    Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

j.    Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

k.    Refrain from other actions and/or inactions of professional negligence yet to be determined.

4.    At a minimum, in order to have achieved compliance with the applicable standard care,

**Nurse Meagan Rose Allen** should have done the following:

a.    Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

b.    Diligently and thoroughly document complete and accurate medical records;

c.    Diligently and thoroughly assess Michael Williamson's erratic behavior;

d.    Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

e.    Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

f.    Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

g.    Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

h.    Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

    i.      Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

    j.      Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

    k.      Refrain from other actions and/or inactions of professional negligence yet to be determined.

5.    At a minimum, in order to have achieved compliance with the applicable standard care,

**Nurse Kellie Stamp** should have done the following:

    a.      Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

    b.      Diligently and thoroughly document complete and accurate medical records;

    c.      Diligently and thoroughly assess Michael Williamson's erratic behavior;

    d.      Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

    e.      Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

    f.      Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

    g.      Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

    h.      Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

    i.      Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

      j.      Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation; and

      k.      Refrain from other actions and/or inactions of professional negligence yet to be determined.

6.      At a minimum, in order to have achieved compliance with the applicable standard care,

**Wellpath LLC**, , by and through its agents, ostensible agents, assignees, representatives

and employees, including but not limited to EMTs, EMT-Ps, RNs, LPNs, nursing

assistants, nurse practitioners, and caregivers, including but not limited to the individuals

listed above and herein, should have done the following:

      a.      Provide Michael Williamson proper medical care based on his known medical history and presentation, including but not limited to appropriate observation.

      b.      Employ or contract with EMTs, EMT-Ps, nurse practitioners, physicians, residents, and nursing staff who possess that degree and skill of learning ordinarily possessed and exercised by practitioners of their profession in the same or similar locality;

      c.      Adequately supervise, direct, train, monitor and control these healthcare providers;

      d.      Draft, promulgate, adopt and/or enforce appropriate rules regulations, policies and procedures which would enable and engender to its healthcare providers, including but not limited to, its EMTs, EMT-Ps, nurse practitioners, physicians and nursing staff, to render appropriate and timely treatment to patients, and ensure the adequacy of the experience level and expertise of these providers;

      e.      Diligently and thoroughly perform a complete health history and physical examination, including but not limited to obtaining and reviewing prior pertinent medical records, perform timely classification interviews, and timely and accurately document all results;

      f.      Diligently and thoroughly document complete and accurate medical records/reports;

      g.      Diligently and thoroughly assess Michael Williamson's erratic behavior;

h.    Recognize the risk of and eventual severe medical episode caused by prolonged refusal of both food and water;

i.    Diligently and thoroughly arrive at an appropriate differential diagnosis upon examination, including but not limited to not medically clearing a patient when he/she is undergoing a severe medical episode and requires emergency transport and hospitalization;

j.    Appreciate the risks associated with opioid withdrawal and the accompanying side effects;

k.    Appropriately observe and assess patient's behavior, including but not limited to confusion, convulsions, immobility, rigidity, nonverbal and otherwise unresponsiveness, emesis, defecation and urination on himself and floor, and recognize the risk of and eventual life-threatening medical episode;

l.    Ensure that the proper consult(s) and/or referral(s), including to the on-call physician and/or nurse practitioner and/or supervisor(s);

m.    Ensure that vital signs and COWS score were assessed, assessed properly, and accurately documented;

n.    Timely and appropriately consider Michael Williamson's health history and symptoms together with presentation;

o.    Select, screen and train qualified personnel to ensure its agents and employees are qualified and competent;

p.    Enact and enforce policies and procedures intended to maximize patient safety;

q.    Ensure its EMTs and EMT-Ps knew to take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to patients' symptoms.

r.    Ensure its EMTs and EMT-Ps knew to take the required, necessary, appropriate and precautionary measures when presented with a patient like Michael Williamson;

s.    Ensure its EMTs and EMT-Ps knew to follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP");

t.     Possess the degree of reasonable care, diligence, learning, judgment and skill ordinarily and/or reasonably exercised and possessed by an emergency medical technician and/or paramedic-emergency medical technician or nurse practicing under the same circumstances;

u.     Provide and furnish appropriate care in accordance with the applicable Standard of Care as an emergency medical technician and/or paramedic-emergency medical technician or nurse;

v.     Enforce and/or abide by appropriate rules, regulations, policies, procedures, bylaws, orders and/or constitutional provisions which could and should have prevented the acts of malpractice, negligence and/or deliberate indifference and injuries to Michael Williamson;

w.     Take time and reasonable steps to investigate, treat, follow-up and/or reasonably respond to Michael Williamson's symptoms;

x.     Take the necessary, timely and appropriate precautionary measures given Michael Williamson's symptoms and condition;

y.     Follow any and all applicable policies, procedures, protocols, rules, regulations, and guidelines, including but not limited to the Michigan State Protocols of the Bureau of EMS, Trauma & Preparedness ("BETP"); and

z.     Refrain from other actions and/or inactions of professional negligence yet to be determined.

**D.     THE MANNER IN WHICH THE BREACH OF THE APPLICABLE STANDARD OF PRACTICE OR CARE WAS THE PROXIMATE CAUSE OF THE INJURY ALLEGED IN THE NOTICE:**

The above-described breaches of the standard of care by Wellpath LLC and its staff, including but not limited to its employees, agents, ostensible agents, nurses, nurse aids, nurse assistants, nurse practitioners, physicians, EMTs, EMT-Ps, including but not limited to those identified above and herein, including but not limited to Kelly Page, Hannah Hessell Cardinale, Karen Kachadurian, Meagan Rose Allen, Kellie Stamp, and Wellpath LLC itself were the proximate cause of Michael Williamson's life-threatening injuries. Such injuries include, but are not limited to, toxic metabolic encephalopathy requiring ventilatory support, aspiration pneumonia, acute kidney injury second to dehydration, kidney failure requiring dialysis, dysphagia, rhabdomyolysis, hyperphosphatemia, elevated liver function tests secondary to rhabdomyolysis, heroin withdrawal, and severe protein calorie malnutrition. His injuries required lengthy in-patient and outpatient rehabilitation and treatment, and he still has difficulty walking, despite intensive physical therapy including subacute rehabilitation. He still has essentially zero toe movement, with significant paresthesia of the bilateral lower extremities, and remains totally disabled. He has also sustained significant short-term memory loss. While the PEG tube was ultimately removed, he continues to

treat as a result of his ventilatory respiratory failure, multiorgan failure, altered mental status, aspiration pneumonia, and rhabdomyolysis.

Michael Williamson has suffered emotional distress, humiliation, depression, loss of enjoyment of life and other damages, all of which are past, present and future. The negligence as described above has caused him to expend or have to expend on his behalf a substantial amount of money for medical expenses, as well as all economic loss/damages as a result of the above-described negligence.

The joint and several negligence of the aforementioned healthcare providers created a foreseeable risk of injury to Michael Williamson. But for the joint and several negligence of the aforementioned healthcare providers, the injuries suffered by Michael Williamson would have been prevented.

*Tracey J Christy, RN, BSN*

TRACEY J. CHRISTY, RN, BSN

Subscribed and sworn to before me
this 23 day of September , 2021

*Leann Allen*

Notary Public
County of St Clair

State of Michigan

My Commission Expires: 02/06/2028.

LEANN ALLEN
Notary Public - State of Michigan
County of St Clair
My Commission Expires Feb 6, 2028
Acting in the County of St Clair

{01174306.DOCX}                                        24